198

JULIO DOMINGO SILVA Y ESCAPA, Plaintiff and Appellee, *v.* JOHN DOE and RICHARD ROE, in their capacity as heirs of DOMINGO TORRÉNS DÍAZ; JOSÉ SABATER, as Judicial Administrator and representative of the estate; THE PEOPLE OF PUERTO RICO, Defendants and the latter two, Appellants.

No. 10,787. Argued March 3, 1953.—Decided July 21, 1953.

*José Sabater, pro se; José Trías Monge, Attorney General (J. B. Fernández Badillo, Acting Attorney General, on the brief), and A. Torres Braschi, Assistant Attorney General, for appellant. Enrique Báez García for appellee.*

MR. JUSTICE MARRERO delivered the opinion of the Court.

Domingo Torréns Díaz died on October 26, 1949 in Mayagüez, single and intestate. Margarita Escapa known as Margarita Torréns, died in the same city on April 23, 1938. The complaint in this case was filed on November 2, 1949 by Julio Domingo Silva, son of Margarita, seeking a declaration of her status as a natural daughter of Torréns Díaz, with all inherent rights. His essential allegations were that Domingo Torréns Díaz and Candelaria Escapa maintained illicit relations in the years 1892 and 1893, as a result of which a daughter was born on October 9 of the latter year [1] who was named Margarita; during pregnancy and at the time the latter was born, Candelaria Escapa was known to be living in concubinage with Domingo Torréns Díaz; [2] from her birth until her death Margarita was in uninterrupted possession of the status of natural daughter of Domingo Torréns Díaz; she was married on August 25, 1917 and on December 20, 1918 gave birth to petitioner Julio Domingo Silva Escapa; Margarita died on the above-mentioned

---

[1] It was subsequently established that Margarita's exact date of birth was April 1, 1893, and the petition was accordingly amended.

[2] Shortly after the action was commenced, petitioner moved for withdrawal of the allegation bearing on concubinage.

date, her filiation not having been established by any court, and leaving petitioner as her sole and universal heir; Torréns Díaz died on the above-mentioned date without leaving any legitimate or natural children, except petitioner, nor any ascendants or collaterals, and since the names of any other persons who might be his heirs are unknown they are designated as John Doe and Richard Roe; and that petitioner, in his capacity as legitimate son of Margarita, is entitled to a court ruling declaring that the latter is the recognized natural daughter of Domingo Torréns Díaz, with the right to bear his surname and to share in the estate.

Mr. José Sabater, in his capacity as Judicial Administrator of the estate of the deceased and designated as such by an order entered on November 14, 1949 by the former District Court of Mayagüez, appeared in the proceeding. He filed a motion to dismiss on the ground that the action of filiation is of a personal character and could be exercised only by Margarita herself, and that the action has prescribed. He also filed a motion to dismiss the counterclaim filed by Carmen María, Guillermina, Julio and Juan Torréns Filpo, as collateral relatives of the late Torréns Díaz. The People of Puerto Rico also appeared [3] by motion to dismiss the petition for lack of facts sufficient to constitute a cause of action. By a lengthy order of July 6, 1950, the trial court dismissed the motions of the Judicial Administrator and the People of Puerto Rico, and granted the motion of the former seeking the dismissal of the counterclaim.[4] The Judicial Administrator and the People answered the complaint separately, denying the essential facts thereof and repeating their special defenses. The case was then tried and exhaustive

[3] According to § 912 of the Civil Code, 1930 ed.:

"In default of persons who have the right to inherit in accordance with the preceding articles, the People of Puerto Rico shall take the inheritance and devote the property to the benefit of the University Fund."

[4] The cross-claimants took an appeal, but by an order of November 8, 1950 this Court dismissed their appeal on the ground that the judgment roll was not seasonably sent to this Court.

oral and documentary evidence offered. The court *a quo* rendered judgment declaring Margarita the recognized natural daughter of Domingo Torréns Díaz, with all legal rights inherent in such status, with costs on the judicial administration, plus $2,000 for attorney's fees.

The Judicial Administrator appealed and alleges that the trial court erred in deciding (1) that the judgment entered by the Court of Mayagüez in 1893, acquitting Domingo Torréns Díaz of the crime of seduction of Candelaria Escapa, is not res judicata in the present case; (2) that the right of action of filiation which the lower court believed belonged to Margarita Escapa, who died without exercising it, was transmitted by inheritance to her son, plaintiff herein; (3) that the action has not prescribed; and (4) that Margarita Escapa's uninterrupted status was that of natural daughter of Domingo Torréns Díaz. The People of Puerto Rico also appealed in due time assigning in its brief the errors listed under 2, 3 and 4 of the brief of the Judicial Administrator, *supra*. We shall next turn to discuss them.

## I

### RES JUDICATA

██ It appears from the record that on or about April 28, 1893, Domingo Torréns Díaz was prosecuted in the Court of Mayagüez for the crime of seduction of Candelaria Escapa, and after a trial he was acquitted on the ground that the testimony of the presumptive prosecutrix had not been duly corroborated; in other words, because, as stated in the judgment of acquittal, "of the facts stated in the complaint the only one established at this trial is that Candelaria Escapa bore a daughter from an unlawful union, her allegation alone not being sufficient to attribute the paternity of this child to Domingo Torréns, for it has not even been established that the latter had a love affair with the girl, and even admitted that he did, and that he made such promises or indulged in such intimacies and obligations that its nonfulfill-

ment would involve the deceit characteristic of true seduction, for if the alleged seduction was actually perpetrated, there are grounds to consider it as voluntary and therefore unjustifiable. ..." [5] It also appears from the record that José María Escapa, father of Candelaria and grandfather of Margarita, died one year and three months after judgment of acquittal was entered, and that shortly after his death Torréns Díaz took Candelaria to live with him in a house located at Vista Alegre alley of the Playa de Mayagüez; that Candelaria and Torréns Díaz lived together from 1895 to 1902, and that the acts of uninterrupted possession of the status of natural daughter of defendant commenced then and there and lasted until the death of Margarita in 1938, when she was over 44 years of age.

According to § 1204 of the Civil Code, 1930 ed.:

". . . . . . . .

"Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the *res adjudicata*.

"In order that the presumption of the *res judicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be *the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.*

". . . . . . . .

"It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy them." (Italics ours.)

---

[5] By express disposition of § 468 of the old Penal Code for the Islands of Cuba and Puerto Rico:

"Those guilty of rape, seduction, or abduction shall be condemned· also, by way of indemnification:

"1. To endow the injured woman, if she were unmarried or a widow.

"2. To emancipate her if she were under his servitude.

"3. To acknowledge the offspring if the character of its origin should not prevent it."

The requirements contained in the third paragraph of § 1204, *supra*, are not present in the instant case. The presumption of res adjudicata cannot therefore arise. In the case at bar, the facts on which the action of filiation is founded are entirely different from and subsequent to those which served as the basis for the action of seduction. This is sufficient to overcome the defense of res adjudicata. As stated in *Orama* v. *Oyanguren*, 19 P.R.R. 788, 798:

> "We are, then, sustained in our opinion hereinbefore expressed that the judgment rendered against the plaintiffs in the first suit in this case is not *res judicata* in the second suit *because the action arises from facts which occurred after the first judgment and no facts are considered which existed or could exist at the time of the rendition of the first judgment.*" (Italics ours.)

We now express ourselves in identical terms. The action of filiation under consideration is based, we repeat, on facts which from their inception are subsequent to those which gave rise to the action of seduction. See also *Roman Catholic Church* v. *Municipality*, 59 P.R.R. 190, 220; *González* v. *Méndez*, 15 P.R.R. 682, 696. *Cf. Chabrán* v. *Méndez*, 74 P.R.R. 719; *Meléndez* v. *Cividanes*, 63 P.R.R. 4, 11. The case of *González* v. *Succession of Canals*, 25 P.R.R. 334, is clearly distinguishable from the instant case. The alleged impediment does not therefore exist.

## II
### TRANSMISSIBILITY OF THE ACTION

 Although, as in the case of divorce, the action of filiation is, for certain purposes, a *quasi in rem* action—*Barletta* v. *Superior Court and Vidal, Int.*, 74 P.R.R. 429, still, the latter action is for most purposes a personal action.[6] We shall therefore proceed to discuss next whether the action of

---

[6] See Sánchez Román, *Derecho Civil*, book 6, Vol. 1, second edition (1910), pp. 54 *et seq.*; 5 Manresa, *op. cit.* 1951 ed., p. 321; Oyuelos, *Digesto*, Vol. III, p. 114; Planiol y Ripert, *Derecho Civil Francés*, Vol. 4, 1933 ed., § 192, p. 240.

filiation which could have existed, or which existed in favor of Margarita, was extinguished by her death in 1938. This question is new in this jurisdiction. The case which bears greatest resemblance to the case at bar in this respect is *Gastón* v. *Heirs of Franceschi*, 43 P.R.R. 285. However, that case is different from the case at issue. In that case, the action was brought by the person seeking acknowledgment and that person dies after its commencement. We held, quoting from the summary, that "Where after the commencement of an action of filiation the plaintiff dies, such death does not abate the action which may be continued by his heirs." In the case at bar, however, the action was not brought during the lifetime of the presumptive daughter but eleven years after her death and seven days after the death of her presumptive father. The legal question, however, remains unchanged. The action of filiation subsists despite the death of Margarita.

Section 603 of the Civil Code, 1930 ed., provides that "The rights to the succession of a person are transmitted from the moment of his death." Section 608 of the same Code provides that *"The inheritance includes all the property, rights, and obligations of a person which are not extinguished by his death."* (Italics ours.)[7] The right of plaintiff's predecessor in interest to bring an action of filiation is a right which she had and which was not extinguished by her death, but was transmitted to her only heir, plaintiff herein.

In *Arroyo* v. *Fernández*, 68 P.R.R. 477, 480, citing the case of *Sosa* v. *Morales*, 58 P.R.R. 362, we stated that the maxim *actio personalis moritur cum persona* "has never prevailed in the Civil Law, nor can it prevail because it is incompatible with the fundamental principle which holds

---

[7] If plaintiff prevails in this case, he shall have the right to use Torréns as the maternal family name and to inherit from Torréns Díaz by representation. See §§ 127 and 887 of the Civil Code, 1930 ed., as amended by Act No. 446 of May 14, 1947, p. 944.

that the heir is the continuation of the juridical personality of the deceased. . . ." We also stated at p. 479 of the same volume that "There is no doubt that certain strictly personal rights die with the person and are not transmitted to the heirs. And it is true that the right to contest the will was a personal right of the predecessor in interest of the plaintiff. *However, we are of the opinion that, although it is a personal right, it is transmissible by inheritance.*" (Italics ours.) See also *P. R. Ry. Lt. & P. Co.* v. *District Court*, 38 P.R.R. 305, 307; *Sosa* v. *Morales*, 58 P.R.R. 362, 365. We should express ourselves in similar terms regarding the right to bring an action of filiation.

We have found no decision of the Supreme Court of Spain fully deciding a question identical with the one at issue. However, although a question somewhat different from the one involved here is decided by the judgment of February 24, 1917 of that court, 139 *Jur. Civ.* 436, the conclusion reached there is wholly applicable to the case at bar. The question was whether the grandparents could continue on behalf of their granddaughter an action of filiation commenced by their children. It was held "that, although the text of § 137 of the Civil Code tends itself to be treated in its juridical sense with a different criterion, if strictly applied it should not have been interpreted as mechanically as the trial court did, for in providing literally that actions may be exercised during the lifetime of the presumptive parents, and that if one or both parents died during the minority of the child, such actions should be exercised by the latter yet, such phrases, although they leave a certain gap in the language, *do not oppose the transmissibility of the action of filiation to the survivors*, unless a too narrow interpretation is admitted, thereby deviating the moral and juridical sentiment which involves a personal condition of such transcendency." (Italics ours.) That judgment of the Supreme Court of Spain has been interpreted by text writers to mean that an action of filiation is transmitted,

upon the death of the presumptive child, to the heirs of the latter. Valverde, *Tratado de Derecho Civil Español*, Vol. 4, p. 457, note 2; Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Vol. 4, sixth ed., revised, 1944, p. 26; Manresa, *Código Civil Español*, Vol. 1, sixth ed., 1943, p. 648; Rodríguez Navarro, *Doctrina Civil Tribunal Supremo*, (*de España*), Vol. 1, p. 661. On the other hand, Scaevola, the commentator, states as follows at p. 417 of Vol. 3 of his *Comentarios al Código Civil*, 1942 ed.:

"But just as there is no objection to a grandparent acknowledging his grandchild, after the death of his son . . . and just as the heirs of the father have . . . the right to contest the action of the latter; we see no reason why the son's heirs should be deprived of a right which is more equitable and sacred than that conferred on the father's heirs, which in the long run rests on a consideration of secondary nature, such as the prejudice which they may sustain in the inheritance. . . ."

Manresa, in commenting on § 135 of the Spanish Civil Code (same as § 125 of our Code, 1930 ed.), in the text and volume cited, asks himself at p. 637: "Who can demand acknowledgment?" and replies *"Undoubtedly only the natural child and the childs descendants."* (Italics ours.) Further on he states at p. 648: "The child may die prior to the four years following his majority, or the document supporting his petition for acknowledgment may be discovered after his death, whether the same occurs after the death of the parents, as contemplated in the Section, or during their lifetime. *In any event, the action shall correspond to the descendants of the child seeking acknowledgment,"* (italics ours), citing the judgment of February 24, 1917 of the Supreme Court of Spain, to which reference is made above. See also Sánchez Román, *Derecho Civil*, book 5, Vol. 2, second ed., 1912, pp. 1050 and 1051, and Colin y Capitant, *Derecho Civil*, Vol. 1, second ed., 1941, p. 699. We believe that this view is entirely correct and that the cause of action belonging to Margarita was transmitted, upon her death, to her sole heir.

## III

### PRESCRIPTION

██ Actions of filiation are governed by the law in force on the date of the child's birth. *Torres* v. *Heirs of Cautiño*, 70 P.R.R. 614; *Toro* v. *Ríos*, 68 P.R.R. 704; *Mercado* v. *Heirs of Mangual*, 35 P.R.R. 388; *Méndez* v. *Martínez*, 21 P.R.R. 238; *Charres* v. *Arroyo*, 16 P.R.R. 777. Margarita was born on April 1, 1893. The Spanish Civil Code (for the Peninsula, Cuba, Puerto Rico and the Philippine Islands) in force at that time in this Island provided in § 135 that:

"The father is obliged to acknowledge the natural child in the following cases:

"1. When an indisputable paper written by him, expressly acknowledging his paternity, is in existence.

"2. *When the child is in uninterrupted enjoyment of the status of a natural child of the defendant father, justified by direct acts of the said father or of his family.*

"In cases of violation, *ravishment,* or rape, the provisions of the penal code shall be observed with regard to the acknowledgment of the issue." (Italics ours.)

And § 137 of the same Code that:

"The actions for the acknowledgment of natural children can be instituted only during the life of the presumed parents, except in the following cases:

"1. If the father or mother died during the minority of the child, in which case the latter may institute the action before the expiration of the first four years of its majority.

"2. If, after the death of the father or mother, some instrument, before unknown, should be discovered in which the child is expressly acknowledged.

"In this case the action must be instituted within the six months following the discovery of such instrument."

However, the Revised Civil Code went into effect in Puerto Rico in 1902. At the end of the Code are inserted the so-called "Temporary Provisions," the fourth one of which reads as follows:

"Actions and rights born and not exercised before the revised Code goes into operation shall continue with the duration and in the terms and the extent to which the preceding legislation may have recognized them, but are subject with reference to their exercise, duration and proceedings to enforce them to the provisions of the Revised Code. . . ."

Section 199 of the said Revised Civil Code provided that:

"An action to claim filiation may be filed at any time within two years after the child shall become of age, and it shall be transmitted to his heirs, if he should die during his minority, or in a state of lunacy. In these cases heirs shall have five years during which to enter an action."

At that time (1902) the right of action of Margarita, who was born before the enactment of the Revised Civil Code, to her filiation, had not as yet been exercised, so that it subsisted to the extent and within the terms allowed by the legislation in force at the time of her birth, but subject to the limitation periods provided by § 199 of the Revised Civil Code. In other words, any right of action of filiation to which she might be entitled under the legislation in force in 1893, should have been exercised at any time before the expiration of two years following her majority. (Section 199 of the Civil Code, *supra*.) Since she was born in the year mentioned, those two years had not yet expired. Section 199 of the Revised Civil Code was repealed by Act of March 9, 1911 (Sess. Laws, p. 234), and the limitation period for actions of filiation was again modified by a new Section —§ 194 of the Civil Code, 1911 ed.[8] This new Section was worded as follows:

*"The action for the recognition of natural children can only be established during the life of the presumptive parents, and a year beyond their death* except in the following instances:

"1. If the father or the mother shall have died during the minority of the child, in which case, the child may bring his

---

[8] Section 194 of the Civil Code, as amended by the said Act of 1911, now appears under number 126 of the Civil Code, 1930 ed.

action before the first four years of his having attained his majority, shall have elapsed.

"2. If after the death of the father or mother there shall appear a written statement or document, of which no notice was previously had, wherein the child is expressly recognized.

"In this case the action shall be established within the next six months after the document has been discovered.

". . . . . . . . ."

(Italics ours.)

By 1911 Margarita had not yet attained majority, so that the new law amending the period for bringing actions of recognition was applicable to any right which she could have had in that respect. Consequently, since the present action was instituted seven days after the death of Torréns Díaz, the right of action which existed in favor of Margarita had not as yet prescribed.[9] *Cf.* § 41 of the Code of Civil Procedure.

Inasmuch as what was said by this Court in *Fuentes* v. *District Court*, 73 P.R.R. 893, is applicable *mutatis mutandis* to the case at bar, we copy below what was said at pp. 900 to 902 in connection with the filiation right of a child born in 1891:

". . . In the filiation suit it is alleged that plaintiff Domingo Osorio was born on May 24, 1891. The former Spanish Civil Code was in force in Puerto Rico at that time and until 1902. Under § 137 of said Code actions for the acknowledgment of natural children had to be commenced only during the lifetime of the putative parents or if they had died during the minority of the child, the action could commence within the four years following the attainment of his majority. Said § 137 was substituted in the year 1902 by § 199 of the Revised Civil Code of 1902, which provided that an action to claim filiation may be filed at any time within two years after the child shall become of age. . . . Should § 137 of the former Spanish Civil Code in force at the time that Domingo Osorio was born, or § 199 of the Revised Civil Code of 1902 apply exclusively to

---

[9] Domingo Torréns Díaz died on October 26, 1949, and the complaint herein was filed on November 2 of that year.

this case, the original complaint as well as the amended complaint introduced by said Domingo Osorio would have prescribed and the motion for summary judgment then should have been sustained, inasmuch as the filiation suit was not commenced while Manuel Fuentes Ramos was alive but 34 years after Domingo Osorio had become of age. However, in 1911, when plaintiff was about 20 years old, our Legislature amended the Civil Code as to the statutory limitations for filiation suits, since § 199 of the Civil Code of 1902 was expressly repealed by Act No. 73 of March 9, 1911, approving instead § 194 which corresponds to § 126 of our present Civil Code, 1930 ed. Said § 126 of our Civil Code, which has been effective since March 9, 1911 up to the present date provides that the action for the recognition of natural children, can only be established during the life of the presumptive parents, and a year beyond their death except in certain instances not in point herein. Said § 126 was in force at the time of Manuel Fuentes Ramos's death, that is, on March 22, 1946, as alleged in the complaint. If § 126 were applied to the case at bar, it would follow that Domingo Osorio filed his original filiation suit within the year subsequent to the death of his alleged ancestor Manuel Fuentes Ramos.

"This Supreme Court has previously held that § 126 of our Civil Code, approved by virtue of the Act of March 9, 1911, can not have application to an action to claim filiation when said action has already prescribed at the time said Act of March 9, 1911 became effective. (Citations.) ... The ruling above mentioned is not applicable to the circumstances and facts in this case such as they appear from the averments and documents submitted to the lower court in deciding the motion for summary judgment. When § 126 of the Civil Code was approved on March 9, 1911, Domingo Osorio's alleged ancestor, Manuel Fuentes Ramos, was still living, and, therefore, the remedy afforded to Domingo Osorio by the provisions of § 137 of the former Spanish Civil Code was still available to him. On March 9, 1911 Domingo Osorio was not yet of age and, therefore, the remedy or the cause of action to which he could have resorted under § 199 of the Revised Civil Code of 1902 had not expired either. Immediately before approving § 126 on March 9, 1911, claimant herein had the potential right or expectancy of claiming his filiation within the two years after his majority, which he would attain on May 24, 1912.

Section 126 granted Domingo Osorio at least an additional and more ample right, that is, that he could file his filiation suit within the year subsequent to the date of his ancestor's death, even though at said time the two years subsequent to his majority granted by § 199 of the Revised Civil Code of 1902 had already elapsed. When his alleged ancestor died, claimant herein, Domingo Osorio, was entitled to avail himself of the provisions of § 126 of our Civil Code, since the afore-mentioned § § 137 of the former Spanish Civil Code and 199 of the Revised Civil Code of 1902, were not in point herein, keeping well in mind that § 126 upon being incorporated into our Civil Code by virtue of the Act of March 9, 1911, did not have the effect of reviving rights that had already expired, but rather buttressed and enlarged the cause of action enjoyed by plaintiff in the case at bar." *Cf. Torres* v. *Heirs of Cautiño, supra.*

## IV
### *Proof of Possession of Status*

■■ Regarding the possession of the status of Margarita, the trial court set forth in its opinion the following findings of fact:

"The ancestor, Domingo Torréns Díaz, and Candelaria Escapa, the mother, also deceased, of Margarita Escapa, had illicit relations some time in the year 1892, both parties being single and having no legal impediment to marry each other. Candelaria became pregnant and on April 1, 1893 gave birth to a girl who was named Margarita and who later became the mother of petitioner, as set forth in paragraph 1. A few days after the birth of Margarita Escapa, Domingo Torréns Díaz was prosecuted before the Criminal Section of the City of Mayagüez on a charge of seduction of Candelaria Escapa, but after a trial the defendant was acquitted on the ground that the testimony of the aggrieved party bearing on the paternity of her daughter had not been corroborated, as per judgment rendered December 22, 1893.

"Notwithstanding the judgment of acquittal, Domingo Torréns Díaz afterwards took Candelaria Escapa to live with him and both lived together as man and wife for several years and reared the minor, Margarita Escapa, as their own daughter. The latter enjoyed ever since, and for the rest of her life, the uninterrupted possession of the status of a natural daughter

of Domingo Torréns Díaz, which was justified by his direct acts. In this connection, the evidence satisfactorily establishes that during all the time Torréns and the mother lived together, the former kept and took care of the child as his daughter; that he used to take her out for a walk and referred to her as his daughter when in the company of friends and relatives; that Margarita called him 'daddy' in public and he called her 'daughter'; that this state of affairs continued even after Torréns left Candelaria Escapa and until Margarita married, against his will, to petitioner's father on August 25, 1917; that, notwithstanding his discontent after the marriage of Margarita, Torréns continued to treat her publicly as his daughter and to provide some of her needs; specifically, that in the years 1922 to 1923, he pleaded with a corporal of the Insular Police not to file a complaint against her, alleging that he did so because she was his daughter; and that after plaintiff was born, he carried him in his arms and caressed him and begged Margarita to take good care of him. These facts and other details and circumstances disclosed by the evidence show, without a shadow of doubt, that Torréns always treated Margarita Escapa as his daughter and that she was publicly known as such."

We have carefully and thoroughly read the oral and documentary evidence offered by the parties. The slight conflict existing in the evidence was settled by the trial court, which was the appropriate court to do so. We are convinced, from a reading of the lengthy transcript of the evidence, that that court was wholly justified in its conclusions and that it did not err in deciding the question the way it did. See *Peña* v. *Heirs of Blondet*, 72 P.R.R. 8, *Toro* v. *Ríos, supra; Bianchi* v. *Bianchi*, 67 P.R.R. 557; *Meléndez* v. *Cividanes, supra; Cruz* v. *Carrasquillo*, 61 P.R.R. 422; *Vázquez* v. *Heirs of Boyrié*, 52 P.R.R. 826; *Colón* v. *Heirs of Tristani*, 44 P.R.R. 163; *Guadalupe* v. *González*, 34 P.R.R. 643.

The errors assigned not having been committed, the judgment appealed from is affirmed.

Mr. Justice Belaval did not participate herein.